**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**JOHN MCGINNIS,**

**Petitioner,**

**v.**

**ROB MUNDT, Warden,**

**Respondent.**

**Civil No. 00-2517 (DSD/SRN)**

**REPORT AND RECOMMENDATION**

---

Petitioner John McGinnis is pro se.

Eric P. Johnson, Esq., Assistant United States Attorney, on behalf of Respondent.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter is before the undersigned Magistrate Judge of District Court on Petitioner John McGinnis' Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. This matter has been referred to the undersigned for report and recommendation pursuant to the provisions of Title 28 U.S.C. §636 and Local Rule 72.1.

For the reasons set forth below, this Court recommends that Mr.

FILED JUL 05 2001
RICHARD D. SLETTEN, CLERK
JUDGEMENT ENTERED ________
DEPUTY CLERK'S INITIALS ________

McGinnis' Petition for Writ of Habeas Corpus be denied.

## I. **Factual and Procedural History**

Petitioner John McGinnis was sentenced in the United States District Court for the Eastern District of Missouri to a 45 month sentence, followed by three years of supervised release, for Conspiracy and Possession with Intent to Distribute Marijuana, in violation of 21 U.S.C. § 846. See Declaration of Alicia J. Vasquez, Attachment A, Inmate Profile. Mr. McGinnis is currently incarcerated at the Federal Correctional Institution (FCI), Waseca, Minnesota, and has a projected release date of November 11, 2001, via good conduct time release. Id.

Petitioner McGinnis arrived at FCI - Waseca on August 3, 1999, from the United States Medical Center Federal Penitentiary in Springfield, Missouri, for participation in the Bureau of Prison's Residential Drug Abuse Treatment Program (RDAP). Id. Six months prior to his arrival at FCI - Waseca, Petitioner signed an "Agreement to Participate in a BOP Residential Drug Abuse Treatment Program," which sets forth a number of program rules and policies inmates must acknowledge and agree to in order to be admitted to the RDAP. See Declaration of Jennifer M. Vossen at ¶ 9, and Attachment D. On August 25, 1999, during his initial program review at Waseca, Petitioner stated that his previous team (at FMC Springfield) had denied him Community

Correction Center (CCC) placement based on the fact that he had failed a prior CCC placement, and that that decision had resulted in his ineligibility for early release pursuant to 18 U.S.C. § 3621(e). See Vossen Decl. at ¶ 5, and Attachment B, Notification of Instant Offense Determination and Notice of Residential Drug Abuse Program Qualification and Provisional 3621(e) Eligibility. This document is signed by Mr. McGinnis, and indicates that he was determined to be eligible to participate in the drug treatment program but would not be eligible for CCC placement and early release under Section 3621(e). Id.

At Petitioner McGinnis' request, the Unit Team indicated they would re-evaluate CCC consideration. Vossen Decl. at ¶ 6.

On January 7, 2000, Petitioner's case manager, Jennifer Vossen, learned, after consulting with the Community Corrections Manager in Chicago, that one previous CCC failure, in and of itself, would not preclude CCC placement. Id. at ¶ 7. The unit team advised Mr. McGinnis that they would recommend a 180-day CCC placement to the RDAP Coordinator. Id. at ¶ 8

At his six month program review on February 24, 2000, Petitioner McGinnis' program review report reflected a CCC recommendation of "180 days based on successful completion of RDAP and acceptance by CCC." Id. At that time SENTRY records still reflected that McGinnis was ineligible for early

release. See id. and Attachment C, Inmate History - Drug Programs.

Petitioner McGinnis' case was reviewed at length by the RDAP Unit and staff at FCI - Waseca,, the North Central Regional Office, and the Central Office. Vossen Decl. at ¶ 10. In April of 2000, the Unit Team, RDAP Coordinator, and Executive Staff at FCI - Waseca conducted a final review of McGinnis' criminal history. Id. McGinnis' records show that he was originally sentenced in the Central District of Illinois, on November 23, 1993, to a 63-month sentence for Money Laundering, Conspiracy to Possess with Intent to Distribute Marijuana, a Schedule I controlled Substance, and False Statement on Tax Return. Vossen Decl. at ¶11, and Attachment F, the Presentence Report. On February 20, 1996, while McGinnis was serving that sentence, he was found provisionally eligible for early release pursuant to Section 3621(e). Vossen Decl. at ¶ 11 and Attachment C. Petition McGinnis completed the residential portion of the RDAP on August 26, 1997. Id.

A condition of successful completion of the RDAP is the successful completion of a 180-day CCC placement. Vossen Decl. at ¶ 11. This portion of the program includes drug treatment programming and is referred to as the "transitional services" component of the RDAP. See Vasquez Decl., Attachments D and E. On September 3, 1997, McGinnis arrived at the CCC. Vossen Decl. at ¶11, and Attachment E. Then, on January 27, 1998, just

months before his early release date, Petitioner was arrested on drug trafficking charges while residing at the CCC. Id. He was removed from the CCC and was determined to have failed the transitional services component of the RDAP. Id.

The sentence Petitioner McGinnis is currently serving at FCI - Waseca is for the offense of Conspiracy to Possess with Intent to Distribute Marijuana, which he committed while residing in the CCC after completion of the residential component of the RDAP. Id. It was jointly determined by BOP staff that McGinnis would not be recommended for a second CCC placement based on his previous behavior at the CCC following the completion of the 500-hour RDAP. Vossen Decl. ¶ 12.

On April 16, 2000, pursuant to policy requirements, the Unit Team prepared for the Warden's final review, approval, or disapproval, an exception review memorandum regarding McGinnis that recommended no CCC placement. Id. On April 23, 2000, Warden R.L. Stiff concurred with the recommendation denying CCC placement based on McGinnis' "blatant disregard for, and demonstrated lack of responsibility with regard to, the rules and regulation[s] of the [previous] CCC." Id. and Attachment G- Memorandum to Warden Stiff dated April 23, 2000.

This denial resulted in Petitioner McGinnis' ineligibility for early

release under 18 U.S.C. § 3621(e) because he would not be able to complete the required 180-day CCC transitional services component of the RDAP. Vossen Decl. at ¶ 13. Therefore, the BOP's computer system, SENTRY, reflects that McGinnis has been 3621(e) INELIGIBLE since January 27, 1998, the date of his arrest at the CCC. Id. and Attachment C.

On August 16, 2000, when Petitioner McGinnis had his six-month program review with the Unit Team, the CCC recommendation indicated "zero (0) days due to exception review for previous CCC failure," which was due to the offense McGinnis committed while initially housed at the CCC on his prior sentence. Vossen Decl. ¶ 14, and Attachment H.

BOP records indicate that Petitioner McGinnis has exhausted his administrative remedies regarding the issues presented in his habeas petition, as required. See Vasquez Decl., Attachment B.

In his petition for habeas relief, John McGinnis contends that the Bureau of Prisons (BOP) erroneously denied him eligibility for a sentence reduction as permitted by 18 U.S.C. § 3621(e)(2)(B), because it did not allow him to complete the requirements of the RDAP when it denied him CCC placement. See Petition. Specifically, Mr. McGinnis asserts that although he was willing to participate in the RDAP again, he informed his Unit Team that he would not enroll unless he was deemed eligible for CCC placement.

McGinnis made every attempt to have his CCC eligibility status reconsidered. And, Petitioner asserts that he informed his Unit Team that he would prefer to return to FMC - Springfield so as to attend to his medical needs and be able to visit with his family.

Petitioner McGinnis contends that on January 8, 2000, ten days before the start of the RDAP, his case manager Jennifer Vossen approached him and announced, "Congratulations Mr. McGinnis, you are going to be eligible for CCC placement!" Petition at p. 3, and Exhibit E. Thus he states that he began the RDAP "secure in the knowledge that [he] was eligible for CCC placement and would therefore be eligible for the time off reduction provided for by Congress for all nonviolent offenders per 18 U.S.C. 3621(e)(2)(B)." Id. Petitioner asserts that his expectations that his CCC eligibility status truly had changed were furthered at every step of the way until, on May 2, 2000, three and one-half months into the RDAP he was served with the Exception Memorandum denying him CCC placement. Petition at pp. 3-4. Petitioner McGinnis states that he was devastated as was his entire family.

Petitioner argues that the BOP's "reversal of proffered CCC eligibility" has upset his settled expectations and is an abuse of discretion, is arbitrary , capricious and manifestly contrary to statute. He states that the BOP

> successfully baited me to enroll in the RDAP Program by declaring me eligible for C.C.C. placement and documenting that fact several times. BOP then stalled for another three and one half months before reversing their position . . .

Petition at p. 16.

Finally, Petitioner McGinnis urges that equitable estoppel be applied against the BOP, and that the Court order BOP to honor its original agreement and immediately send him to CCC placement.

Respondent Mundt opposes the petition, asserting that the facts and law relevant to this case demonstrate that McGinnis is not entitled to the relief he seeks. Respondent submits that: 1) early release pursuant to 18 U.S.C. § 3621(e) is discretionary; 2) McGinnis has been aware that early release eligibility is provisional; 3) there is no constitutional or due process right to early release prior to the expiration of a lawfully imposed sentence; and 4) the claim that the Government is barred by estoppel is without merit.

## II. Discussion

### A. Consideration for Early Release Under 18 U.S.C. § 3621(e)

The Residential Drug Abuse Program (RDAP) is a program which has been provided by the BOP since 1990, pursuant to 18 U.S.C. § 3621(b), to assist prisoners in overcoming their substance abuse problems. Section 3621

directs the BOP to "make available appropriate substance abuse treatment for each prisoner the [BOP] determines has a treatable condition of substance addiction or abuse." 18 U.S.C. §3621(b). The RDAP program is "a course of individual and group activities provided by a team of drug abuse treatment specialists and the drug abuse treatment coordinator in a treatment unit set apart from the general prison population, lasting a minimum of 500 hours over a six to twelve-month period." 28 C.F.R. § 550.56. Participation in RDAP is entirely voluntary and, in order to qualify for participation in the RDAP, an inmate must meet all of the following criteria:

> (1) The inmate must have a verifiable documented drug abuse problem.
>
> (2) The inmate must have no serious mental impairment which would substantially interfere with or preclude full participation in the program.
>
> (3) The inmate must sign an agreement acknowledging his/her program responsibility.
>
> (4) Ordinarily, the inmate must be within thirty-six months of release.
>
> (5) The security level of the residential program institution must be appropriate for the inmate.

28 C.F.R. §550.56(a).

To encourage inmates to participate in the program, the BOP has traditionally offered a number of incentives, including financial awards,

consideration for the maximum period of time at a community corrections facility, and local institution incentives such as preferred living quarters. See 28 C.F.R. § 550.57. To give inmates an additional incentive to participate in the RDAP, Congress in 1994 authorized the Director of the BOP to grant sentence reductions of up to one year for those who successfully complete the program. This authority comes from 18 U.S.C. § 3621(e)(2)(B), which provides that:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

Because the legislative history accompanying the statute gave the BOP the discretion over the implementation of the program, it was necessary for the BOP to develop criteria to determine which inmates would be eligible to receive an early release. See H.R. Rep. 103-320, 103rd Cong., 1st Sess. (1993)("[T]his subparagraph authorizes the Bureau of Prisons to shorten by up to one year the prison term of a prisoner who has successfully completed a treatment program, based on criteria to be established and uniformly applied by the Bureau of Prisons.")

Consideration for early release is outlined at 28 C.F.R. § 550.58, which sets forth several categories of inmates who are not eligible for early

release, to wit: "inmates who are not eligible for participation in a community-based program as determined by the Warden on the basis of his or her professional discretion." 28 C.F.R. § 550.58(a)(v). The Respondent points out that Petitioner McGinnis has been determined ineligible for placement in a CCC because he committed his current federal offense while at a CCC awaiting early release after completion of the residential portion of the RDAP.

BOP Program Statement 5330.10 mirrors the qualifications for early release found at 28 C.F.R. § 550.58. See Attachment D to the Vasquez Decl. The Respondent asserts that pursuant to this Program Statement, the Warden retains discretion to deny community-based placement to inmates who he deems not to be suited for such placement. Id. Furthermore, pursuant to BOP Program Statement 7310.04, the Warden has discretion to determine whether an inmate is suitable for CCC placement. See Attachment C to the Vasquez Decl. Respondent submits that making a recommendation on CCC placement involves a review of several factors including an inmate's current offense, pending charges, if any, previous CCC releases, and history of escapes and violence. Id.

The Respondent focuses the Court's attention on the facts available to Warden Stiff at the time he denied Petitioner CCC placement. To wit, following his placement in the CCC on September 3, 1997, having

completed the 500-hour residential portion of the RDAP and having been found provisionally eligible for early release pursuant to 3621(e), and in the custody of the BOP, Petitioner McGinnis facilitated drug transactions at the Southeast Missouri Community Treatment Center, Inc. Vossen Decl. at ¶ 11. The Respondent contends that despite McGinnis' participation in RDAP, and the incentive of early release only months away, he nevertheless became involved with drug trafficking while at the CCC. Accordingly, based on McGinnis' disregard for the rules of the CCC, his unit team wrote a memorandum to the Warden recommending that McGinnis be denied CCC placement. The Warden concurred, and the Respondent submits that the Warden properly exercised his discretion by denying CCC placement to McGinnis because McGinnis had previously been afforded the opportunity to live at a CCC and committed a drug offense while awaiting 3621(e) early release.

When an inmate is not eligible for CCC placement, he cannot complete the RDAP because the community-based "transitional services" component is mandatory. See Attachment D to the Vasquez Decl., Program Statement 5330.10, Chapter 6. The Respondent submits that the BOP added the CCC requirement after receiving comment from the American Psychiatric Association that the BOP's requirement of one hour per month of transitional services would be insufficient to facilitate good treatment results. See Vasquez

Decl. Attachment E, 61 Fed. Reg. 25,121 (1996). The BOP agreed that a community-based program is necessary to achieve successful results, and therefore required that early release be contingent upon an inmate's completion of a transitional services component in a community-based program. Id.

**B. Review of the BOP's Regulations**

Respondent Mundt correctly asserts that this Court should review the BOP's regulations under the two-step standard set forth in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc. et al., 467 U.S. 837 (1984). First, Respondent argues that if the intent of Congress is clear and unambiguously expressed in Section 3621, the BOP and the Court must give effect to congressional intent. Second, if the statutory language is ambiguous or silent on a particular issue, then the Court must determine whether the BOP's interpretation is "based on a permissible construction of the statute." Chevron, 467 U.S. at 843.

The Respondent asserts that because the language of the statute does not unambiguously prohibit the BOP's community-based treatment requirement, the CCC requirement need only be a permissible interpretation of the statute to survive Chevron scrutiny. The Court agrees.

In Love v. Tippy,133 F.3d 1066, 1069 (8th Cir.), cert. denied, 524 U.S. 956 (1998), the Eighth Circuit Court of Appeals discussed the

discretionary nature of the award of time off a prisoner's sentence.

> [W]e note that § 3621(e) is discretionary. It does not require the BOP to give any prisoner a sentence reduction. Section 3621(e)(2)(B) only requires that the BOP: 1) limit its consideration for sentence reductions to those prisoners convicted of nonviolent offenses; and 2) limit any sentence reduction to one year or less.

133 F.3d at 1069.

Furthermore, the Respondent points out that the legislative history of Section 3621 indicates that the determination of successful completion of a residential substance abuse treatment program is to be "based on criteria established and uniformly applied by the Bureau of Prisons." H.R. Rep. No. 103-320 (1993). And, the BOP determined that successful completion of a residential drug abuse treatment program under 18 U.S.C. § 3621(e) would require completion of a transitional services component in a community-based program. See Attachment E to the Vasquez Decl., 61 Fed. Reg. 25,121 (1996).

The Respondent argues that even if the BOP has improperly expanded the definition of "residential substance abuse treatment" by requiring community-based treatment, Petitioner McGinnis is still not entitled to the relief he seeks because Section 3621(e)(2)(B) affords the BOP broad discretion to deny sentence reductions even to those inmates who have "successfully complete[d] a treatment program." 18 U.S.C. § 3621(e)(2)(B). Again, under

Section 3621(e)(2)(B), the BOP "may", but need not, reduce the sentences of those inmates. The Court agrees.

The Respondent also contends, and the Court agrees, that the exclusion from early release under Section 3621(e) of inmates who cannot complete community-based treatment is not arbitrary or capricious, and does not conflict with the purposes underlying the statute and should therefore pass the Chevron analysis as a permissible construction of the statute. See Rublee v. Fleming, 160 F.3d 213, 215-216 (5th Cir. 1998)(holding that the BOP regulation making inmate ineligible for early release if inmate is not eligible to participate in community-based treatment was permissible exercise of BOP discretion). See also Frias v. Reese, 1998 WL 822996 (N.D. Cal.1998)(denial of habeas petition of inmate who was not eligible for CCC placement due to INS detainer and therefore was not entitled to consideration for sentence reduction because community-based treatment phase could not be completed).

Respondent Mundt further submits that Petitioner McGinnis has been aware that early release eligibility is provisional, noting that McGinnis cites to the "Notice of Residential Drug Abuse Program Qualification and Provisional 3621(e) Eligibility" (Exhibit A to the Petition), as proof that he was deemed eligible and thereby became reliant upon his early release. Respondent points out however, that while page one of this document states that Petitioner

McGinnis was found qualified by Drug Treatment Specialist Julie Garrett to participate in the RDAP, page two of the document clearly states that Ms. Garrett's "current assessment in consultation with your Unit Team is that it does not appear that you are provisionally eligible for early release", (see Petition Exhibit A, page 2) based on the fact that McGinnis was "classified as CCC failure - is not considered suitable candidate for release via CCC placement", ( see Attachment B to the Vossen Decl. at p. 2). Petitioner McGinnis signed the Notice of Residential Drug Abuse Program Qualification and Provisional 3621(e) Eligibility", (Exhibit A to the Petition), on February 3, 1999. Furthermore, this document notifies McGinnis that

> . . . nearing the time of release, the warden will determine if you are eligible for transfer to a community-based program. If you are not eligible, you cannot complete the community transitional services portion of the drug program, and therefore you may not receive a 3621(e) release.

Petition Exhibit A, p. 2.

Petitioner McGinnis' next citation to proof that he was deemed eligible for early release is the "Agreement to Participate in a BOP Residential Drug Abuse Treatment Program", (Exhibit B to his Petition). The Respondent asserts that being found qualified or eligible to participate in the RDAP is not the equivalent of being found eligible for early release. Rather, asserts the

Respondent, an inmate's case is always reviewed to determine the suitability for half-way house (CCC) placement and early release before allowing an inmate the benefit of not completing his lawfully imposed sentence. See Vasquez Decl., Attachment D, Program Statement 5330.10. The Court agrees.

Likewise, Petitioner's reference to a Program Review Report dated August 22, 1999, as proof that the BOP had deemed him eligible for early release fails to support such an assertion. See Exhibit C to the Petition. Instead, this document states that McGinnis is "18 U.S.C. § 3621(e) RELEASE INELIGIBLE." Id.

Finally, Petitioner McGinnis' citation to Exhibit E to his Petition as evidence of his allegation that Case Manager Vossen told him on January 8, 2000, that he was eligible for CCC placement is simply not borne out. This document lists a chronology of action taken regarding McGinnis' CCC placement issue. Id. This document states that on August 25, 1999, McGinnis was deemed 3621(e) ineligible, and that on January 7, 2000, Case Manager Vossen indicated that Community Corrections Management (CCM) would **consider** McGinnis for CCC placement. Id.

The Court finds that the fact that CCM would review McGinnis' case and background for potential CCC placement does not and should not automatically lead to the conclusion that McGinnis would be entitled to CCC

placement and that his sentence would be reduced. See Vossen Decl. The Respondent represents that Petitioner McGinnis has not been told he would be sent to a CCC or that his sentence would be reduced. Id. To the contrary, he has been told since he began the RDAP that he is not eligible for CCC placement or early release, and any review of his case would only result in a provisional determination. See Vossen Decl., Attachments B, C, D, and H.

As such, Petitioner's argument that the Government is barred by estoppel due to misconduct must fail. Petitioner has not established any of the estoppel elements set forth in Story v. Marsh, 732 F.2d 1375, 1383 (8th Cir. 1974): 1) a false representation by the government with the intent to induce the claimant to act on that representation; 2) the claimant's lack of knowledge or inability to obtain the true facts; and 3) reliance on the misrepresentation by the claimant to his injury.

As the Respondent points out, from the beginning of McGinnis' second enrollment in the RDAP, BOP staff have made McGinnis aware that he was ineligible for early release, and that any reconsideration and recommendation on his behalf was provisional and subject to change. See Vossen Decl. The Agreement Petitioner signed prior to commencing his RDAP indicates that early release decisions are provisional and will be reviewed again nearer to the prospective early release date. See Vossen Decl., Attachment D.

Thus, there was no false representation made to Petitioner McGinnis. And, even if Mr. McGinnis did not understand the provisional nature of the reviews, or was not informed of the provisional nature of the reviews, the Respondent asserts that such an occurrence would have been staff oversight and not an act done with the intent to cause injury. There are no facts in the record before this Court which support an intent by BOP staff to induce McGinnis to act to his detriment. Finally, McGinnis has not shown how participation in the RDAP caused him cognizable injury.

To the extent that Petitioner argues that he has a protectable liberty interest in a sentence reduction, the Respondent asserts it is evident that 18 U.S.C. § 3621(e)(2)(B) does not create a liberty interest because the statute does not grant an entitlement to a sentence reduction. Rather, Section 3621(e)(2)(B) provides that a prisoner's custody "may be reduced by the Bureau of Prisons." As such, whether an inmate is awarded early release under Section 3621(e)(2)(B) is purely a discretionary act. See Sesler v. Pitzer, 926 F.Supp. 130, 132 (D.Minn. 1996)(aff'd 110 F.3d 569 (8th Cir. 1997); Wotlin v. Fleming, 136 F.3d 1032, 1036 (5th Cir. 1998)(section 3621(e)(2)(B) does not create a liberty interest in early release); Jacks v. Crabtree, 114 F.3d 983, 986 n.4 (9th Cir. 1997), cert. denied, 118 S.Ct. 1196 (1998)(rejecting inmate's claim that section 3621(e)(2)(B) creates a liberty interest). It is the expressed will of

Congress to allow the BOP the discretion to reduce the sentences of nonviolent offenders, but the denial of a reduction does not give rise to a dramatic departure from the basic conditions of a prisoner's sentence or otherwise impose an atypical and significant deprivation essential to a finding of a protected liberty interest. Sandin v. Connor, 515 U.S. 472, 483 (1995)(the denial of a sentence reduction works no "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" nor a "major disruption in his environment"). See also, Jacks v. Crabtree, 114 F.3d at 986 n.4 (not only is § 3621(e)(2)(B) written in nonmandatory language, but denial of the one-year reduction does not impose an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life, and the denial of a sentence reduction merely means that an inmate must serve the sentence as imposed).

In addition, the Court notes that the Constitution itself does not afford Petitioner McGinnis a liberty interest in a sentence reduction, as it is well established that an inmate has no constitutional or inherent liberty interest in being released prior to the expiration of a valid sentence. See Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979).

The Court finds no merit to Petitioner's argument centered around Bowen v. Hood, 202 F.3d 1211 (9th Cir. 2000), as Hood is wholly inapplicable to

the facts presented by McGinnis' petition. McGinnis was not subject to the retroactive application of new regulations or policy changes.

The Court commends Mr. McGinnis on his efforts to address his substance abuse problem, and upon twice completing the 500-hour residential component of the RDAP. His success in this endeavor should not be overshadowed by the fact that, because of his behavior during his prior CCC placement, he is simply unable to complete all phases of the RDAP as required in order to be eligible for early release under 18 U.S.C. § 3621(e)(2)(B). The Bureau of Prisons applied the statute, the regulations, BOP policies and procedures to Mr. McGinnis' case in a non-arbitrary, non-capricious and well-documented manner, and arrived at a discretionary determination that is well supported by the facts in the record before this Court. The Court hereby recommends, based on the Respondent's arguments and all of the reasons set forth herein, that Petitioner John McGinnis' Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 be denied, and the matter dismissed with prejudice.

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1) Petitioner John McGinnis' Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1) be **DENIED AND THE CASE BE**

**DISMISSED WITH PREJUDICE**.

Dated: July 5, 2001.

SUSAN RICHARD NELSON
United States Magistrate Judge

Under Fed. R. Civ. P. 72 and D.Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **JULY 19, 2001**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.